UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF WEST VIRGINIA
AT CHARLESTON

ROGER WOLFE,

       Plaintiff,

v.                               Civil Action No. 2:08-01114

JASON A. TACKETT,
EMERGENCY MEDICINE PHYSICIANS OF
KANAWHA COUNTY, PLLC, and
JOHN DOES 1-3,

       Defendants.

<u>MEMORANDUM OPINION AND ORDER</u>


       Pending is plaintiff Roger Wolfe's motion to remand, filed October 20, 2008.  Pending also is the defendants' motion to dismiss any state law claims, filed October 28, 2008.  Because the court lacks subject matter jurisdiction, the motion to remand is granted.


I.


       This action ("<u>Wolfe I</u>") was filed on June 17, 2008 and is the first of two factually similar actions commenced by Mr. Wolfe in the Circuit Court of Kanawha County, West Virginia. Both actions name Jason Tackett ("Dr. Tackett") and Emergency

1

Medicine Physicians of Kanawha County, PLLC ("EMP") as defendants.  The second action, titled <u>Roger Wolfe v. Paul A. Green, Jason S. Crane, J.K. Rapp, Kristy L. Layne, D.L. Lemmon, West Virginia State Police, Jason A. Tackett, Emergency Medicine Physicians of Kanawha County, PLLC, and John Does 1-3</u>, No. 2:08-cv-1023 ("<u>Wolfe II</u>"), was filed on July 21, 2008 and removed to this court on August 25, 2008.  Mr. Wolfe's motion to remand <u>Wolfe II</u> has today been denied.[1]  Despite factual similarities between the two actions, the claims here asserted against Dr. Tackett and EMP in <u>Wolfe I</u> differ from the section 1983 claims asserted against them in <u>Wolfe II</u> and, as a result, the jurisdictional analyses also differ.[2]  The end result of these differing analyses is that two actions, based on nearly identical facts, will proceed against two of the same defendants in two

_____

[1] Mr. Wolfe did not challenge the court's subject matter jurisdiction in <u>Wolfe II</u>.  The motion to remand was premised upon the defendants' alleged failure to comply with the thirty-day consent to removal requirement embodied in 28 U.S.C. § 1446(b).

[2] The complaint in <u>Wolfe II</u> contains ten counts, only two of which assert claims against Dr. Tackett and EMP.  Those two counts are titled "Conspiracy to Violate 42 U.S.C. § 1983 for Coercive Questioning and Conduct that Shocks the Conscious" and "Conspiracy to Violate 42 U.S.C. § 1983."  In support of removal of this action, defendants contend that Counts II and IV of the complaint, respectively titled "Aiding and Abetting Assault and Battery" and "Civil Conspiracy," create federal question jurisdiction even though, as noted <u>infra</u> at p. 9, the complaint here makes no reference to § 1983.

2

different courts.  This state of affairs will undoubtedly result in inefficiencies, though coordination of discovery can alleviate some duplication.  A desire for efficiency does not, however, vest the court with jurisdiction.

The first sentence of the complaint provides that: "This is an action for money damages brought pursuant to West Virginia law . . . ."  (Compl. at 1) (emphasis supplied).  After this statement, the complaint sets forth the following allegations of fact.  Mr. Wolfe is a citizen of Kanawha County, West Virginia.  (Id. ¶ 1).  At times relevant to the complaint, EMP was under contract with Thomas Memorial Hospital to provide emergency medical services.  (Id. ¶ 3).  Dr. Tackett was employed by EMP and worked at Thomas Memorial Hospital.  (Id. ¶ 2).  Both Dr. Tackett and EMP are being sued in their individual capacities and the complaint states that EMP, as Dr. Tackett's employer, is vicariously liable for his acts and omissions.  (Id. ¶¶ 2,3).  Mr. Wolfe asserts, upon information and belief, that both EMP and Dr. Tackett were utilized by the West Virginia State Police ("WVSP") to "supervise, examine and treat detainees and arrestees who were injured in the course of their arrest or detention." (Id. ¶¶ 2,3).  Three John Does are also included as defendants. (Id. ¶ 4).

At approximately 11:40 p.m. on June 16, 2007, Mr. Wolfe was stopped on Quarrier Street in Charleston, West Virginia by West Virginia State Trooper Paul Green ("Trooper Green") on suspicion of driving under the influence of alcohol. (Id. ¶ 6). Later that evening, at approximately 12:30 a.m., Mr. Wolfe was arrested by Trooper Green and taken to the West Virginia State Police Barracks in South Charleston. (Id. ¶ 7). Upon arrival, Mr. Wolfe was seated in the booking office with his hands handcuffed behind his back. (Id. ¶ 8,9). Other detainees were also in the booking office, as was West Virginia State Trooper Kristy Layne ("Trooper Layne"). (Id.) At some point, Trooper Layne, who was seated at a desk preparing paperwork, became irritated because Mr. Wolfe was smiling. (Id. ¶¶ 10, 11). Trooper Layne asked Mr. Wolfe what he was smiling about, and when Mr. Wolfe did not respond to her satisfaction, Trooper Layne rose from her desk and told Mr. Wolfe that she would take the smile off his face. (Id. ¶ 11). Trooper Layne then directed Mr. Wolfe to stand up, and when he did, Trooper Layne grabbed Mr. Wolfe, shook him and shoved him back into his chair. (Id.)

Following this altercation, Trooper Green entered the booking office where Trooper Layne engaged him in conversation. (Id. ¶ 12). Trooper Green then told Mr. Wolfe that he would take

4

the smile off his face, grabbed Mr. Wolfe, and took him into an empty adjoining room.  (<u>Id.</u> ¶ 13).  Based upon information and belief, the complaint states that a West Virginia State Trooper by the name of Crane ("Trooper Crane") joined Trooper Green in the adjoining room.  (<u>Id.</u> ¶ 14).  Upon entering the room, Trooper Crane aided Trooper Green in "unnecessarily, unreasonably, and excessively" assaulting and battering Mr. Wolfe whose hands were still handcuffed behind his back.  (<u>Id.</u> ¶ 15).  At the conclusion of the unprovoked beating, Trooper Green left the adjoining room and asked the other detainees in the booking office if "anyone else wanted to be a smart ass" and threatened to take them into the adjoining room.  (<u>Id.</u> ¶ 17).  A trooper was summoned to clean up the blood resulting from Mr. Wolfe's beating.  (<u>Id.</u> ¶ 15).  According to the complaint, the force exercised by Troopers Green and Crane was not applied in a good faith effort to maintain or restore discipline.  (<u>Id.</u> ¶ 16).  Due to severe head trauma, Mr. Wolfe has no memory of the events leading up to, during, or immediately after his beating at the hands of Troopers Green and Crane.  (<u>Id.</u> ¶ 19).  Mr. Wolfe asserts that for several months prior to, and on the night of his assault and battery, none of the surveillance cameras in the barracks were working and that officials and troopers of the WVSP were aware of this state of affairs.  (<u>Id.</u> ¶ 18).

Mr. Wolfe was taken to Thomas Memorial Hospital, where he was admitted at 1:13 a.m. on June 17, 2007.  (Id. ¶ 20).  It is alleged, upon information and belief, that Dr. Tackett, the treating doctor, allowed a supervisory trooper, Sergeant J.K. Rapp ("Sergeant Rapp") "to interview and take statements from Mr. Wolfe regarding the events and circumstances of his assault and battery which attempted to exonerate the State Police from their conduct." (Id. ¶ 21).  While due to his severe head trauma, Mr. Wolfe has no recollection of the interview, the complaint states that Sergeant Rapp wrote down questions and elicited Mr. Wolfe's answers.  (Id. ¶ 22, 25).  Mr Wolfe was then required to initial next to each question and answer.  (Id.)  Mr. Wolfe's initials are illegible and made randomly, at times above the line drawn next to each question, and at times below.  (Id.)  Mr. Wolfe contends that the interview, which concluded at 2:10 a.m., was unrelated to his arrest and that "the acts of Jason A. Tackett were in furtherance of a conspiracy and joint enterprise to deprive Mr. Wolfe of his rights." (Id. ¶ 21, 22).  The complaint states that because of the questions directed to Mr. Wolfe by Sergeant Rapp, the defendants knew, or should have known, that Sergeant Rapp was "attempting to cover up the fact that the West Virginia State Troopers had inflicted the present injuries on Mr.

6

Wolfe."  (Id. ¶ 23).   The complaint states further that "[b]y allowing Sgt. Rapp to conduct an 'interview' of Mr. Wolfe which was a blatant attempt to cover up the assault and battery of Mr. Wolfe, Defendants conspired and aided and abetted the assault and battery."  (Id. ¶ 24).

When the interview ended, Mr. Wolfe's head wounds were sutured and he was taken for a CT scan and radiological testing. (Id. ¶ 26).   The CT scan and radiological tests revealed that Mr. Wolfe had several fractured bones in his nose and face, including the bones around his eyes; injuries consistent with a beating. (Id. ¶ 27).   Despite these injuries, and Mr. Wolfe's severe head trauma, defendants released him from the hospital to the custody of Trooper Green at approximately 4:15 a.m. on June 17, 2007. (Id. ¶ 28).   Later that day, Mr. Wolfe was taken before a magistrate judge for arraignment, and after several hours he was arraigned.  (Id. ¶ 29).   After his arraignment and release from custody, Mr. Wolfe went to his primary care physician complaining of pain and watery discharge from his nose.  (Id. ¶ 30). Recognizing that his injuries were potentially life threatening, Mr. Wolfe's physician told Mr. Wolfe to go to the hospital immediately.  (Id. ¶¶ 30, 31).   Mr. Wolfe proceeded to the Charleston Area Medical Center where doctors determined that the

7

watery discharge from his nose was spinal fluid and confirmed the several fractures to his nose and face.  (Id. ¶ 31).  Given his injuries, Mr. Wolfe was admitted to the Charleston Area Medical Center for treatment on June 18, 2007 and discharged on June 23, 2007.  (Id. ¶ 32).

According to Mr. Wolfe, during the events described above the "[d]efendants and the above named Troopers were engaged in a joint enterprise, and civil conspiracy."  (Id. ¶ 33).  Mr. Wolfe further asserts that "[t]he Defendants assisted each other in performing the various actions described and lent their physical presence and support to each other during these events." (Id. ¶ 33).  The final paragraph, being numbered 34, of the section of the complaint entitled "FACTS" states: "The actions of the Troopers and the Defendants violated clearly established and well settled federal and state rights of Mr. Wolfe."  (Id. ¶ 34). The entirety of the FACTS section is incorporated by reference into each of the four counts that follow.

The four count complaint sets forth the title of each count: Count I, Negligence; Count II, Aiding and Abetting Assault and Battery; Count III, Negligence (sic) or Intentional Infliction of Emotional Distress; Count IV, Civil Conspiracy. Invoking the court's federal question jurisdiction, on September

8

19, 2008, the defendants removed.  Despite the fact that 42
U.S.C. § 1983 is not explicitly relied upon or even cited in the
complaint, the defendants contend that Counts II and IV assert
claims arising under section 1983.  (Not. of Rem. ¶ 4).  As
earlier noted, the complaint specifically states at the outset
that this action is one for money damages "brought pursuant to
West Virginia law."


                                II.


         If a civil action could have been commenced in federal
court - that is, if federal district courts possess original
jurisdiction - the case may be removed by the defendant or the
defendants from state to federal court.  See 28 U.S.C. § 1441(a).
One category of original jurisdiction is federal question
jurisdiction.  See In re Blackwater Sec. Consulting, LLC, 460
F.3d 576, 583 (4th Cir. 2006).  Federal question jurisdiction
exists over "all civil actions arising under the Constitution,
laws, or treaties of the United States."  28 U.S.C. § 1331.  In
determining whether a plaintiff's claim arises under federal law,
courts apply the well-pleaded complaint rule, "which holds that
courts 'ordinarily . . . look no further than the plaintiff's
[properly pleaded] complaint in determining whether a lawsuit

raises issues of federal law capable of creating federal-question jurisdiction under 28 U.S.C. § 1331.'" Pinney v. Nokia, Inc. 402 F.3d 430, 442 (4th Cir. 2005) (quoting Custer v. Sweeney, 89 F.3d 1156, 1165 (4th Cir. 1996)).  The well-pleaded complaint rule "makes the plaintiff the master of the claim; he or she may avoid federal jurisdiction by exclusive reliance on state law." Caterpillar v. Williams, 483 U.S. 386, 392 (1987).

        "The burden of establishing federal jurisdiction is placed upon the party seeking removal."  Mulcahey v. Columbia Organic Chemicals Co., 29 F.3d 148, 151 (4th Cir. 1994).  In light of the significant federalism concerns implicated by removal jurisdiction, it is strictly construed, and if federal jurisdiction is doubtful, remand is necessary.  See id.; Schlumberger Indus., Inc. v. Nat'l Surety Corp., 36 F.3d 1274, 1286 (4th Cir. 1994).


                              III.


        As noted, defendants argue that despite being titled "Aiding and Abetting Assault and Battery" and "Civil Conspiracy," Counts II and IV of the complaint are in fact claims under § 1983.  (Not. of Rem. ¶ 4; Resp. to Mot. to Remand at 3-5).


                              10

Defendants also contend that even if a § 1983 claim does not
appear on the face of the complaint, removal is appropriate under
the "artful pleading doctrine." (Resp. to Mot. to Remand at 5-
7). In response, Mr. Wolfe argues that contrary to the
defendants' assertions, Counts II and IV are "based on state
common law causes of action, Plaintiff's Complaint does not cite
to or allege violations of 42 U.S.C. § 1983, and the relief
requested does not depend on the resolution of any federal
question." (Mem. in Supp. Mot. to Remand at 2). According to
Mr. Wolfe, the artful pleading doctrine is inapplicable. (Reply
to Resp. to Mot. to Remand at 3-5).


A. The Well-Pleaded Complaint Rule


        Both Counts II and IV of the complaint incorporate the
allegations set forth above, including the allegation in
paragraph thirty-four of the complaint that the troopers and
defendants "violated clearly established and well settled federal
and state rights of Mr. Wolfe." (Compl. ¶ 34). As set forth in
the complaint, the claims in Count II and IV provide:

     COUNT II - AIDING AND ABETTING ASSAULT AND BATTERY
        . . .

     40. Defendants, through their actions provided the

                              11

above-named Troopers with the ability - real or
perceived - to cover up their assault and battery of
Mr. Wolfe and others.

41. Defendants conduct in, among other things, allowing
"interviews" of victims of police abuse before
providing treatment and of offering real or perceived
assistance in cover-ups of police abuse, significantly
assisted the above-named Troopers in their abuse of Mr.
Wolfe.

42. As a direct and proximate result, of the
Defendants' conduct, Mr. Wolfe [suffered] harm for
which he is entitled to recover.

. . .

COUNT IV - CIVIL CONSPIRACY

. . .

48. At all relevant times, Defendants engaged in a
conspiracy with the above-named Troopers and are
therefore liable for the acts of the conspiracy which
included the Troopers' assault and batter[y] of Mr.
Wolfe.

49. As a direct and proximate result of the acts of the
conspiracy described above, Mr. Wolfe suffered harm for
which he is entitled to recover.

(Compl. at 7-8).


        To state a claim under § 1983, a plaintiff must

establish three elements: "(1) the deprivation of a right secured

by the Constitution or a federal statute; (2) by a  person; (3)

acting under color of state law." Jenkins v. Medford, 119 F.3d

1156, 1159-60 (4th Cir. 1996).  As the defendants point out,

private parties are not immune from suits under § 1983.

12

Summarizing its earlier holdings, the Supreme Court stated that,

> to act "under color of" state law for § 1983 purposes
> does not require that the defendant be an officer of
> the State. It is enough that he is a willful
> participant in joint action with the State or its
> agents. Private persons, jointly engaged with state
> officials in the challenged action, are acting "under
> color" of law for purposes of § 1983 actions.

Dennis v. Sparks, 449 U.S. 24, 27-28 (1980); see also Scott v.
Greenville County, 716 F.2d 1409, 1422 (4th Cir. 1983) ("It is
now settled that private persons who willfully participate in
joint action with a state official act under the color of law
within the meaning of § 1983, notwithstanding the official's
immunity from civil liability.") (quoting Black v. Bayer, 672
F.2d 309, 318 (3d Cir. 1982)).

According to the defendants, regardless of whether §
1983 is cited in the complaint, "the claim is certainly there."
(Resp. to Mot. to Remand at 3).  In support of this proposition,
defendants direct the court to the ten-count complaint in Wolfe
II which cites to § 1983 in seven of those counts and, according
to the defendants, makes "practically identical allegations."
(Id. at 4).  But simply because the defendants say that the
complaint in this action asserts a § 1983 claim, does not make it
so.  Mr. Wolfe, as "the master of the complaint," was entitled to
"eschew[] claims based on federal law, [and thereby] choose to

have the cause heard in state court." Caterpillar, 482 U.S. at 398; see also Spaulding v. Mingo County Bd. of Educ., 897 F. Supp. 284, 287 (S.D. W. Va. 1995) ("Where plaintiff's claim involves both a federal ground and a state ground, the plaintiff may plead both grounds . . . . Plaintiff is, however, free to ignore . . . the federal ground and rely on the state ground.").

Similarly, simply because Mr. Wolfe could have brought a claim under § 1983, does not mean that he did. See e.g., Ruchka v. Husfelt, No. 08-cv-779, 2008 U.S. Dist LEXIS 51438, at *4 (W.D. Pa. July 1, 2008) ("While the averments of plaintiff's complaint are no doubt *capable* of encompassing federal civil rights claims . . . it is not apparent on the face of her complaint that plaintiff is, in fact, making such claims."); Stinson v. Scoggins, No. 07-1757, 2008 U.S. Dist. LEXIS 16326, at *2 (D. La. Mar. 4, 2008) ("federal question jurisdiction is not present merely because a federal law claim, such as 42 U.S.C. § 1983, that was not pleaded by the plaintiff may be available to him."); Renard v. San Diego Unified Port Dist., No. 07-cv-2347, 2008 U.S. Dist. LEXIS 11065, at *5 (S.D. Cal. Feb. 13, 2008) ("Removal jurisdiction is not conferred simply because plaintiff had an opportunity to sue under a federal statute.").

14

Under the well-pleaded complaint rule, consideration of the complaint in Wolfe II is inappropriate.  See Harless v. CSX Hotels, Inc. 389 F.3d 444, 450 (4th Cir. 2004) ("federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint").  But even if the complaint in Wolfe II were considered, that complaint explicitly relies upon § 1983, while the complaint here expressly states that the action is "brought pursuant to West Virginia law."  (Compl. at 1).  That the two complaints contain similar factual allegations and name some of the same defendants is of little moment.  As the master of his complaint, Mr. Wolfe was entitled to bring two separate actions, asserting federal claims in one, and state law claims in the other.  As pointed out by the United States District Court of the Eastern District of Pennsylvania, "Plaintiff's choice to split his action is an inefficient means to prosecute his claims, however, such inefficiency does not confer removal jurisdiction over Plaintiff's state law action under 28 U.S.C. § 1441(a)."  Morley v. Philadelphia Police Dept., No. 03-6165, 2004 U.S. Dist. LEXIS 5496, at * 11 (E.D. Pa. Mar. 24, 2004).

West Virginia law recognizes civil conspiracy as a cause of action.  The Supreme Court of Appeals has noted that

15

"[a]t its most fundamental level, a 'civil conspiracy' is 'a combination to commit a tort." Kessel v. Leavitt, 511 S.E.2d 720, 753 (W. Va. 1998). More specifically,

> [a] civil conspiracy is a combination of two or more persons by concerted action to accomplish an unlawful purpose or to accomplish some purpose, not in itself unlawful, by unlawful means. The cause of action is not created by the conspiracy but by the wrongful acts done by the defendants to the injury of the plaintiff.

Id. at 754; see also Dixon v. Am. Indus. Leasing Co., 253 S.E.2d 150, 152 (W. Va. 1979) (same). West Virginia also recognizes "aiding and abetting a tort" as a theory of liability. Price v. Halstead, 355 S.E.2d 380, 386 (W. Va. 1987). "The basis for imposing liability under an aiding and abetting theory is that if the breach of duty by the actor was substantially encouraged by the conduct of a third party, then this party may also be found liable." Id.; see also Barth v. Performance Trucking Co., 424 S.E.2d 602, 604 (W. Va. 1992) ("For harm resulting to a third person from the tortious conduct of another, one is subject to liability if he knows that the other's conduct constitutes a breach of duty and gives substantial assistance or encouragement to the other so to conduct himself."). Without ruling on the merits of Mr. Wolfe's complaint, it may be that he will be unable to show that the defendants were involved in a conspiracy, or that they aided and abetted the alleged assault and battery,

16

inasmuch as the alleged assault and battery occurred prior to any communication between Dr. Tackett and the above mentioned troopers.  Mr. Wolfe, however, may well be entitled to redress under West Virginia law should he prove that the defendants knowingly assisted Sergeant Rapp in attempting to cover up the assault and battery.

In <u>Mallamo v. Town of Rivesville</u>, 477 S.E.2d 525 (W. Va. 1996), two West Virginia police officers, Officers Wilson and Van Pelt, went to the plaintiff's home in order to arrest him. During the course of the arrest, Officer Van Pelt shot the plaintiff.  As a result of the shooting and subsequent events, plaintiff filed suit in federal court against the officers and other defendants.  Plaintiff asserted that the officers had attempted to cover up the details of the shooting in order to avoid liability.  Among other claims, the complaint included a claim under § 1983 for conspiracy, as well as a West Virginia common law conspiracy claim.  <u>Id.</u> at 529.  The federal court dismissed plaintiff's federal claims with prejudice, and his state law claims without prejudice.  Thereafter, plaintiff filed suit in state court, again asserting a common law conspiracy claim against Officer Wilson.  Believing Officer Wilson possessed immunity, the trial court granted summary judgment in his favor

17

and dismissed plaintiff's conspiracy claim.  Reversing the trial court, the Supreme Court of Appeals of West Virginia determined that plaintiff's claim "that Wilson conspired to conceal the truth and/or to distort the facts surrounding the shooting" stated a common law conspiracy claim and found that Officer Wilson was "not immune from liability for conspiracy."  Id. at 532; see also Kelley v. City of Williamson, 655 S.E.2d 528, 535 (W. Va. 2007) (summarizing Mallamo and stating "[t]his court found that the chief would not be immune from liability if a conspiracy to conceal the facts surrounding the shooting incident were proven since such concealment would be outside the scope of his employment, with malicious purpose, and in bad faith.").  Cf. Pursel v. Parkland School Dist., 70 Pa. D. & C.4th 129, 140 (Com. Pl. Lehigh 2005) ("Concealment may be the basis for a conspiracy claim.").

        While Mallamo considered police involvement in a cover up, there is no reason to believe that private parties, such as the defendants here, can not similarly be held liable, particularly when it is alleged that the defendants acted in concert with the police.  Indeed, in Kessel v. Leavitt the Supreme Court of Appeals cited favorably to 78 Am. Jur. 2d Torts § 9 (1974) for the proposition that "one who does anything, or

                                    18

permits anything to be done, without just cause or excuse, the
necessary consequence of which interferes with or annoys another
in the enjoyment of his legal rights, is absolutely liable."
Kessel, 511 S.E.2d at 752.  The court also recognized that
"fraudulent concealment may arise when the defendant successfully
prevents the plaintiff from making an investigation . . . or *when
the defendant frustrates an investigation*," and held that, "the
active concealment of information from a party with the intent to
thwart that party's efforts to conduct an investigation, relating
to such information, constitutes fraudulent concealment."  Id. at
753.  Counts II and IV of the complaint allege that the
defendants acted in concert with Sergeant Rapp to obfuscate the
truth about the cause of Mr. Wolfe's injuries in order to hinder
his ability to pursue redress.  West Virginia law provides a
remedy for such harm, and while Mr. Wolfe could have looked to §
1983 for recovery, he did not do so in this case.

        Finally, the mere mention in the complaint that the
acts complained of "violated . . . federal and state rights" of
the plaintiff does not vest this court with jurisdiction.
(Compl. ¶ 34).  The complaint states specifically at the outset
that the action is "brought pursuant to West Virginia law."
(Compl. at 1).  That the acts alleged in the complaint may also

19

violate federal rights is of no moment here.  Moreover, in moving
to remand, Mr. Wolfe repeatedly represents that Counts II and IV
are founded in state law.  (Mem. in Supp. Mot. to Remand at 2;
Reply to Resp. to Mot. to Remand at 1).


        At most, the reference to federal rights in paragraph
thirty-four creates an ambiguity in the complaint.  But because
removal jurisdiction is to be strictly construed, any such
ambiguity must be resolved in favor of remand.  <u>See</u> <u>Mulchahey</u>, 29
F.3d at 151; <u>Avitts v. Amoco Prod. Co.</u>, 53 F.3d 690, 993 (5th
Cir. 1995) (district court lacked removal jurisdiction because
"oblique reference to . . . [defendants'] violation of
unspecified federal laws" does not create federal question
subject matter jurisdiction); <u>Greenshields v, Warren Petroleum</u>
<u>Corp.</u>, 248 F.2d 61, 64 (10th Cir. 1957) ("all doubts arising from
defective, ambiguous and inartful pleadings should be resolved in
favor of the retention of state court jurisdiction."); <u>E. States</u>
<u>Health & Welfare Fund v. Philip Morris, Inc.</u>, 11 F. Supp. 2d 384,
393 (S.D.N.Y 1998) ("the principle of construction against
removal extends to ambiguous pleadings.").[3]

_____

        [3] <u>See</u> <u>also</u> the unpublished district court cases of <u>Pigott v.</u>
<u>Ostulano</u>, No. 2:07-cv-90, 2007 U.S. Dist. LEXIS 34390, at *12
(E.D. Va. May 9, 2007) (granting motion to remand because, "[a]t
best, the complaint's use of the phrase 'under color of state
law' creates an ambiguity"); <u>Impressive Printing Inc. v. Lanier</u>

Applying the well-pleaded complaint rule, the complaint does not assert claims supporting federal question jurisdiction.

B. Artful Pleading Doctrine

The artful pleading doctrine is a corollary of the well-pleaded complaint rule applicable in "a handful of 'extraordinary' situations where even a well-pleaded state law complaint will be deemed to arise under federal law for jurisdictional purposes." Hall v. N. Am. Van Lines, Inc., 476 f.3d 683, 687 (9th Cir. 2007) (quoting Holman v. Laulo-Rowe Agency, 994 F.2d 666, 668 (9th Cir. 1993). While "[s]tated in its most general terms, the doctrine provides that a plaintiff cannot frustrate a defendant's right of removal by carefully pleading the case without reference to any federal law . . . the artful-pleading doctrine lacks precise definition and has bred considerable confusion." 14B ALAN WRIGHT, ARTHUR R. MILLER & EDWARD H. COOPER, FEDERAL PRACTICE AND PROCEDURE § 3722 (3d ed. 2008). Despite the absence of any clear definition of the artful pleading

_____

Worldwide, Inc., No. 05-1609, 2005 U.S. Dist. LEXIS 36883, at *10 (E.D. La. Nov. 9, 2005) ("Because . . . ambiguities with respect to removal should be construed in favor of remand, the unclear phrasing of paragraph 18 of plaintiff's complaint weighs in favor of remanding this case to state court.").

21

doctrine, the doctrine is clearly applicable when state law claims are subject to complete preemption. See Rivet v. Regent Bank of La., 522 U.S. 470, 475 (1998) ("The artful pleading doctrine allows for removal where federal law completely preempts a plaintiff's state-law claim."). Indeed, the Third and the Fifth Circuits have concluded that the artful pleading doctrine applies only in cases of complete preemption. See Bernhard v. Whitney Nat'l Bank, 523 F.3d 546, 551 (5th Cir. 2008) ("In fact, we have said that the artful pleading doctrine applies only where state law is subject to complete preemption."); Gopel v. Nat'l Postal Mail Handlers Union, 36 F.3d 306, 310 n.5 (3d Cir. 1994) (noting that the complete preemption doctrine "has been referred to elsewhere as the 'artful pleading' doctrine, under which a court will not allow a plaintiff to deny a defendant a federal forum when the plaintiff's complaint contains a federal claim 'artfully pled' as a state law claim."). Cf. Rossello-Gonzalez v. Calderon-Serra, 398 F.3d 1, 27 (1st cir. 2004) ("we are skeptical of the applicability of the artful pleading doctrine outside of complete federal preemption of a state cause of action."). The merits of such an understanding of the artful pleading doctrine aside, § 1983 does not completely preempt state law claims, and defendants make no argument to the contrary.

22

Courts have also applied the artful pleading doctrine in "substantial-federal-question cases."  Arthur R. Miller, Artful Pleading: A Doctrine in Search of a Definition, 76 TEX. L. REV. 1781, 1784 (1998).[4]  A putative state law claim falls within this category when:

> (1) "a substantial, disputed question of federal law is a necessary element of . . . the well-pleaded state claim, or the claim is an "inherently federal claim" articulated in state-law terms, or (2) "the right to relief depends on the resolution of a substantial, disputed federal question."

Lippitt v, Raymond James Fin. Servs., Inc., 340 F.3d 1033, 1042 (9th Cir. 2003) (internal citation omitted); see also Mikulski v. Centerior Energy Corp., 501 F.3d 555, 565 (6th Cir. 2007) ("Under the substantial-federal-question doctrine, a state law cause of action may actually arise under federal law, even though Congress has not created a private right of action, if the vindication of a right under state law depends on the validity, construction, or

---

[4] Relying on a footnote in Federated Department Stores, Inc. v. Moitie, 452 U.S. 394, 397 n.2 (1981) some courts applied the artful pleading doctrine to "a rather amorphous category [of cases] based on notions of federal claim preclusion." Miller, Artful Pleading, supra, at 1784.  These courts held that "removal properly may rest on the alleged preclusive effect of a prior federal judgment." Rivet, 522 U.S. at 477.  That proposition has subsequently been refuted by the Supreme Court.  Id. at 478 ("We therefore clarify today that Moitie did not create a preclusion exception to the rule . . . that a defendant cannot remove on the basis of a federal defense.").

effect of federal law.");[5] <u>Turgeau v. Admin. Review Bd.</u>, 446 F.3d
1052, 1060 (10th Cir. 2006) ("Under the 'artful pleading'
doctrine, however, a plaintiff may not defeat removal by failing
to plead federal questions that are essential elements of the
plaintiff's claim."); <u>Marcus v. Am. Tel. & Tel. Co.</u>, 138 F.3d 46,
55 (2d Cir. 1998) ("The artful-pleading doctrine, another
corollary to the well-pleaded complaint rule, prevents a
plaintiff from avoiding removal by framing in terms of state law
a complaint the real nature of [which] is federal, regardless of
plaintiff's characterization, or by omitting to plead necessary
federal questions in a complaint.")(internal citation marks
omitted).  As shown above, the claims in Counts II and IV of the
complaint do not necessitate resolution of a "substantial,
disputed question of federal law."  <u>Lippitt</u>, 340 F.3d at 1042.

        Indeed, the claims in Counts II and IV do not require
resolution of any question of federal law.  "[T]he artful
pleading doctrine constitutes a narrow exception to the

---

[5] It is worth noting that in <u>Mikulski</u>, the Sixth Circuit
treated the "substantial-federal-question doctrine" as distinct
from the artful pleading doctrine.  <u>See</u> <u>Mikulski</u>, 501 F.3d at
560.  While this makes little analytical difference, such
treatment is emblematic of the confusion surrounding the artful
pleading doctrine.  Indeed, in <u>Lippitt</u> the court likened
application of the doctrine to "treading in a doctrinal
minefield."  340 F.3d at 1041.

straightforward rules of removal jurisdiction, to be invoked only

in exceptional circumstances as it raises difficult issues of

state and federal relationships and often yields unsatisfactory

results." Clinton v. Acequi, Inc., 94 F.3d 568, 571 (9th Cir.

1996). Defendants' proffered application of the doctrine "would

effectively abrogate the well-pleaded complaint rule." City of

Warren v. City of Detroit, 495 F.3d 282, 287 (6th Cir. 2007).

Through their invocation of the artful pleading doctrine

defendants seek to alchemize Mr. Wolfe's properly plead state law

claims into claims under § 1983. But just as common metals

cannot be turned into gold, Mr. Wolfe's state law claims cannot

be transformed into federal claims. As the master of his

complaint, Mr. Wolfe sought to, and did, assert claims under the

law of West Virginia. Because Counts II and IV of the complaint

assert claims only under West Virginia law, the court lacks

subject matter jurisdiction and the case must be remanded.

Lacking the authority to do so, the court does not reach the

defendants' motion to dismiss.


                              IV.


     It is accordingly ORDERED that Mr. Wolfe's motion to

                              25

remand be, and it hereby is, granted.

        The Clerk is directed to forward copies of this
memorandum opinion and order to all counsel of record and a
certified copy to the clerk of court for the Circuit Court of
Kanawha County.

                        DATED: April 9, 2009

                        _____
                        John T. Copenhaver, Jr.
                        United States District Judge